Jonathan Lippman Formal Opinion Chief Administrative Judge No. 2004-F3 Unified Court System 140 Grand Street, Suite 704 White Plains, New York 10601
Dear Judge Lippman:
You have requested an opinion regarding whether various individuals and entities involved in the New York State Attorney — Client Fee Dispute Resolution Program ("Program") implemented through local bar associations ("local programs") are eligible for State-provided defense and indemnification under Public Officers Law § 17. You specifically ask whether (1) the bar associations themselves; (2) bar association employees, officers and directors, and members who administer or assist in the administration of the local programs; and (3) volunteers who serve as "neutrals" are "employees" as defined in section 17. We conclude that neither the bar associations nor the individuals who administer the local programs are eligible for State-provided defense and indemnification. In the event the Board adopts proposed amendments to the standards governing the operation of the local programs, however, we conclude that the volunteers who serve as neutrals would be eligible for State-provided defense and indemnification.
Fee Dispute Resolution Program
Part 1230 of the Joint Rules of the Appellate Division provides that the Chief Administrator of the Courts shall establish a fee arbitration program ("Program") to provide for the resolution by arbitrators of fee disputes between an attorney and a client based upon representation in civil matters.22 N.Y.C.R.R. § 1230.1. Part 137 of the Rules of the Chief Administrator establishes the Program under the direction of a Board of Governors ("Board"). 22 N.Y.C.R.R. Part 137. The Board is appointed by the Chief Judge and the Presiding Justices of the Appellate Division. Id. § 137.3(b).
The Program is administered and implemented through local programs, which must be approved by the Board before they can provide dispute resolution services. See Board of Governors of the New York State Attorney-Client Fee Dispute Resolution Program, Standards and Guidelines ("Standards") § 3(B). The Board provides training for arbitrators and mediators that adjudicate disputes under the auspices of the Program,[1] collectively called "neutrals." Standards § 2(E). We have been advised that the Board recently began to provide training for individuals involved in administering the local programs as well. The Board also monitors local programs, 22 N.Y.C.R.R. § 137.3(g); Standards § 7(B), in part through an annual report containing a statistical summary of fee dispute resolution activity and other Board-required information that each local program must submit to the Board. See 22 N.Y.C.R.R. § 137.3(g); see also22 N.Y.C.R.R. § 137.4(b)(4); Standards § 5(C).
To the extent possible, local programs are conducted through local bar associations.[2] 22 N.Y.C.R.R. § 137.3(g); Standards §§ 2(D), 3(A). Bar associations that wish to implement a local program must submit to the Board for the Board's approval written procedures for the proposed local program. Standards § 4. We have been advised that the Board has rejected such procedures in at least one instance, and required that they be substantially re-drafted to ensure consistency with Part 137 and the Standards.
Once the Board approves a local program, the participating bar association is responsible for the operation of the local program. The bar association conducts the daily administration of the local program. Standards § 5(A). It designates one or more individuals as the contact person for the local program; this person acts as the liaison between the local program and the disputants, the public, members of the bar, the Board, and attorney disciplinary authorities. Id. We have been advised that counsel for the Board is in frequent contact, by telephone and e-mail, with the administrators of local programs.
The bar association must also recruit, select, provide for the training of, and maintain a sufficient qualified pool of neutrals. Standards § 4(C)(2) and (3). The bar association assigns these neutrals to specific disputes. Id. § 8(A).
We have been further advised that the Board is prepared to amend the Standards to provide greater oversight of neutrals by the Board. Under the proposed changes, the Board would approve appointments of neutrals recommended by local programs, after review of a prospective neutral's qualifications. The Board would also have the power to remove a neutral for failure to meet the requirements of Part 137. Under the proposed amendments, while the bar association would still assign neutrals to specific disputes, the procedure for assignment would be prescribed by the Board in the following manner: "Each local program shall maintain a list or lists of Board approved neutrals organized by area of practice, where appropriate. When selecting a neutral, the local program shall select the next available neutral with appropriate experience for the proceeding in question."
Analysis
Section 17 of the Public Officers Law provides that the State generally must provide for the defense of an employee in "any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged . . . to have occurred while the employee was acting within the scope of his public employment or duties." Pub. Off. Law § 17(2). The State generally must also indemnify its employees in the amount of any judgment obtained against them in any state or federal court, or in the amount of any settlement of claim, if the act underlying the judgment or settlement occurred while the employee was acting within the scope of his public employment and the injury or damage complained of was not the result of intentional wrongdoing by the employee. Id. § 17(3)(a). The provision of defense and indemnification is dependent on the public employee's compliance with certain specified procedural requirements. Id. § 17(4).
Under section 17, "employee" is defined as "any person holding a position by election, appointment or employment in the service of the state . . . whether or not compensated, or a volunteer expressly authorized to participate in a state — sponsored volunteer program, but shall not include an independent contractor." Pub. Off. Law § 17(1)(a). The bar associations, their employees, officers, directors, and members, and the volunteers who serve as "neutrals" are eligible for section 17 defense and indemnification only if they are considered "employees." For the reasons discussed below, we are of the opinion that neither the bar associations through which the Program is implemented and administered locally nor the individuals involved in administering the local programs are "employees" for purposes of Public Officers Law § 17.[3] Upon the adoption of the proposed amendments to the Standards, we believe that the neutrals will be eligible for coverage under section 17.
Bar Associations and Administrators
The definition of "employee" under section 17 generally requires service to the State by virtue of "election, appointment or employment." Neither the bar associations nor the individuals administering local programs hold a position in the service of the State by election. Nor do they serve the local programs by virtue of employment by the State. See, e.g., Op. Att'y Gen. No. 98-F11 (employee of state Consumer Protection Board serving on advisory board as part of job duties covered by Public Officers Law § 17); Op. Att'y Gen. No. 87-F10 (state Department of Labor employees serving on council as part of job duties eligible for defense and indemnification under section 17). The question remains as to whether they serve through appointment by the State. We believe that they do not.
First, with regard to the bar associations through which local programs operate, while local programs must be approved by the Board, the bar associations themselves are not appointed or selected by the Board, a factor which we have found relevant to section 17 determinations in the past. See Op. Att'y Gen. No. 96-F9 (members of regional service councils who were designated by Commissioner of Health entitled to defense and indemnification under Public Officers Law § 17); Op. Att'y Gen. No. 89-F2 (members of local emergency committees appointed by Executive Department committee entitled to defense and indemnification under Public Officers Law § 17). Board approval of a local program proposed by a bar association is, we believe, analogous to approval by a regulatory agency of a program presented by an entity within the agency's jurisdiction, such as, for example, a social services program run by a county but subject to approval by the State, see,e.g., Social Services Law § 473 (counties must prepare a county-wide plan for the provision of adult protective services to be reviewed and approved by the State Department of Social Services), rather than to the appointment process whereby an individual is selected to fill a particular position.
With regard to the individuals administering the local programs, both the regulations and the Standards require that the bar associations designate a "contact person."22 N.Y.C.R.R. § 137.4(b)(5); Standards §§ 4(C)(4), 5(A). While approval of a local program depends on the provision of specific information regarding this contact person (name, phone and fax numbers, business and e-mail addresses, Standards § 4(C)(4)), the selection of a particular individual is left wholly to the bar associations, not to the Board. To the extent that these individuals are "employees," they would be employees of the bar associations rather than of the Board.
We thus conclude that the bar associations and the individuals administering local programs, because they do not "hold a position by election, appointment or employment in the service of the state," are not "employees" of the Board for purposes of Public Officers Law § 17. They therefore are not, in our opinion, eligible for defense and indemnification by the State for actions or omissions occurring while they are acting within the scope of these duties.
Neutrals
With respect to the neutrals volunteering within a local program operated by a bar association, assuming the adoption of the proposed amendments to the Standards, we believe that they will be eligible for defense and indemnification by the State. Under section 17, a "volunteer expressly authorized to participate in a state-sponsored volunteer program" is considered an employee. We have previously concluded that a program is a State-sponsored volunteer program where it was established and administered by a State agency and the volunteers were appointed and directly supervised by State employees.[4] See Op. Att'y Gen. No. 2000-F1 (volunteer attorneys providing legal advice to pro se litigants through program established by OCA and under direct supervision of OCA staff attorneys eligible for State-provided defense and indemnification); Op. Att'y Gen. No. 92-F7 (attorneys appointed by court to serve in administration of court's attorney disciplinary system eligible for State-provided defense and indemnification).
In the instant situation, the Program was mandated and established by the State. Neutrals receive training by the Board. Moreover, with the proposed changes, while the Program would still be administered by the local bar associations, the bar associations would not have unlimited discretion in their oversight of the neutrals.[5] Instead, that discretion would be significantly limited by the Board, who would appoint neutrals and have the power to remove them from their positions. Additionally, the ability of a bar association to assign neutrals to specific matters would be cabined by the Board's requirement that the bar association follow a specific procedure in assigning qualified neutrals. We thus believe that, subject to the adoption of the proposed modifications to the Standards, the Board will exercise supervision over the neutrals sufficient to qualify the Program as a "State-sponsored volunteer program" such that neutrals will be eligible for section 17 coverage. Our conclusion that the neutrals will qualify as volunteers in a State-sponsored program is based on the unique features of the Program relating to the neutrals, as well as the fact that the Program was mandated and established by the State.
In sum, we conclude that the bar associations implementing the Program through local programs are not appointed by the Board, and thus that they are not "employees" of the Board eligible for State-provided defense and indemnification. We are of the further opinion that because the individuals administering local programs are not selected by the Board but rather by the bar associations, they are not "employees," of the Board and thus are not subject to coverage under Public Officers Law § 17. We believe, however, that, subject to the adoption of the proposed amendments to the Standards discussed above, the individuals volunteering as neutrals — appointed and trained by the Board, and subject to removal by the Board, as well as to the Board's procedure for assignment to particular matters — are "volunteers" eligible for State-provided defense and indemnification.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] Although the Standards require only that dispute resolution training be Board-approved, see Standards §§ 10, 11(F), counsel to the Board has indicated that the Board provides training to neutrals.
[2] In a county where a bar association does not provide the service, the office of the Administrative Judge of the Judicial District encompassing the county must administer a Board-approved local program. Standards § 3(D).
[3] Because we conclude that the bar associations are not "employees" of the State for another reason, we do not address the issue of whether the term "employee" is limited to natural persons and precludes defense and indemnification of entities.
[4] While the question was not presented in your request for opinion, we have been advised that the Board assumes that the neutrals working in local programs administered by the district administrative judges, rather than by a bar association, are eligible for section 17 coverage. We agree with this assessment, based upon our previous opinions: the neutrals are appointed and directly supervised by an agent of the State within a State- operated program.
[5] We note that the independence of the neutral to decide a dispute before him is not subject to the control of either the bar association or the Board. Thus, the supervision either entity has over the individual neutral does not extend to results in particular matters.